IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| IN RE APPLICATION OF OVIK MKRTCHYAN FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:25-mc-00041 |

### DECLARATION OF OVIK MKRTCHYAN

Pursuant to 28 U.S.C. § 1746, I, Ovik Mkrtchyan, declare as follows:

1. I am the claimant (plaintiff) in two proceedings I initiated in the High Court of England and Wales on April 22, 2025: (1) libel proceedings against 2Trom Media Group and Viktor Tokarev; (2) libel proceedings against Radha Stirling.

2. I submit this declaration in support of my Application for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 (the "Application"). This declaration is based on my personal knowledge except where I indicated otherwise.

*Background*

3. I am an entrepreneur who owns and leads multiple businesses focused on innovation, sustainability, and technology.

4. I was born in Armenia and raised in Uzbekistan. I now reside in Europe.

5. My businesses are primarily located in the United Kingdom, Switzerland, Uzbekistan, and Latvia.

6. One of these companies, Gor Investment Limited, focuses on initiatives to combat infection in medical patients, process and dispose of hazardous waste, harness gas metallurgy technology for the production of nano powders of rare and precious metals, and train young

1

engineers in Uzbekistan, among other things. *See* Exhibit 1, Gor Investment, Our Projects, available at https://gorinvestment.com/our-projects/.

7. Gor's advisory board reflects the company's global reach and technological prowess. Its members have included former U.S. Secretary of State Mike Pompeo, former U.S. Secretary of Energy and Governor of Texas Rick Perry, former director of the Oak Ridge National Laboratory Dr. Thomas Zacharia, and former Under Secretary of State Thomas A. Shannon, Jr.

8. I have been the target of an ongoing campaign by individuals and entities around the world to injure me tortiously and by unlawful means—first by engineering my illegal detention in Uzbekistan, and then by disseminating false and disparaging information about me to third parties (the "Campaign"). I describe this Campaign in further detail below.

9. Participants in this Campaign include:

   a. Ulugbek Shadmanov, an Uzbek businessman and, on information and belief, a principal shareholder of United Cement Group ("UCG"), which describes itself as the largest cement producer in Central Asia.

   b. Respondent Stephen Akard, a partner at the Indianapolis-based law and public affairs firm Respondent Bose McKinney & Evans LLP (collectively with its subsidiary Respondent Bose Public Affairs Group LLC, "Bose McKinney"). I understand Akard is an attorney and non-legal advisor for Shadmanov and UCG.

   c. Stephen Payne, my former business associate. Payne currently owes my companies more than $1 million in connection with a failed LNG project in Eastern Europe.

   d. Radha Stirling, a public relations consultant who published false and disparaging content about me on her website and on a number of other websites and social media platforms. According to press reporting, Shadmanov is Stirling's client. As

set out above, I brought a libel lawsuit against Stirling in the English courts on April 22, 2025.

    e. The London Post, an online content hosting platform owned by 2Trom Media Group and Viktor Tokarev of Moscow Media Group. The London Post (which is published by 2Trom Media Group, of which Tokarev is a Director) published false and disparaging content about me. As set out above, I brought a libel lawsuit against the London Post's owners in the English courts on April 22, 2025.

10. In the last two years, my adversaries' attempts to harm me through this Campaign have included:

- unsuccessful attempts by Shadmanov to force me to engage in illegal conduct (2023);
- a successful effort to orchestrate my unlawful detention in Uzbekistan (January-April 2024);
- a false and disparaging letter sent by Payne to the President of Uzbekistan, Shavkat Mirziyoyev (August 2024);
- a false and disparaging letter sent by Akard to President Mirziyoyev on behalf of UCG and Shadmanov (August 2024);
- a failed attempt to engineer my rearrest in Uzbekistan (August 2024);
- libelous content posted by The London Post (October 2024);
- libelous content posted by Stirling (January 2025); and
- dozens of other false and disparaging articles and posts published by third parties (July 2024-present).

11. I believe that the Campaign's participants include additional individuals and entities, whose identities and exact involvement in the Campaign are currently unknown to me.

12. I intend to bring additional claims, including claims for tortious conspiracy, against participants in the Campaign subject to jurisdiction in England and Wales.

### A.     *Shadmanov's attempts to force me to engage in illegal acts*

13.     In 2023, Shadmanov demanded, through an individual acting on his behalf, that I assist him with putting certain Uzbek citizens on the U.S. sanctions list to prompt their prosecution in Uzbekistan or else my business projects in Uzbekistan would be shut down. For that purpose, I was provided personal information about the targeted Uzbek individuals, including itinerary sheets and passport information.

14.     After I refused to comply with these unlawful demands, I became the target and victim of unlawful persecution, which on information and belief, was organized by Shadmanov through people close to him in Uzbekistan's government.

### B.     *My unlawful detention in Uzbekistan*

15.     In early 2024, my adversaries succeeded in orchestrating my wrongful detention in Uzbekistan. On information and belief, Shadmanov and others working on his behalf were responsible for this.

16.     I was held under harsh conditions for several months. Officials confined me to a small cell, repeatedly interrogated me, denied access to medication and other necessities, and attempted (unsuccessfully) to extract money and false confessions.

17.     While I was detained, my former business associate Stephen Payne sent a letter of support to President Mirziyoyev of Uzbekistan calling for my release and explaining that I was unfairly targeted by Shadmanov and UCG.

18.     Payne's letter, dated April 10, 2024, included the following statements:

- "On January 17, 2024 upon their departure from the office in Tashkent, Mr. Ovik Mkrtchyan and his daughter were detained by officers of the SGB (State Security Service)."

- "For the duration of his detainment from 17 January 2024 the officers of SGB were constantly pressing Mr. Ovik Mkrtchyan to admit guilt for crimes he did not commit."

4

- "Since Mr. Mkrtchyan did not admit any fictitious charges, the SGB personnel resorted to pressuring and forcing the relatives and acquaintances of Mr. Mkrtchyan to provide fictitious information that would incriminate him."

- "The true reason behind this issue is a conflict between Mr. Ovik Mkrtchyan on one hand, and" a group headed by "Shadmanov . . . on the other."

Exhibit 2, Letter from S. Payne, April 10, 2024.  This is a true and correct copy.

19. Throughout my detention, I refused to confess to crimes I had not committed.  I was ultimately released in April 2024.

20. Official records confirm that I was not convicted of any crimes.

C. **Respondents' participation in the Campaign**

21. After my release from detention, my adversaries turned their efforts to damaging my reputation and laying the apparent groundwork for my rearrest through the Campaign.

22. On August 16, 2024, on behalf of UCG, Akard sent a letter to President Mirziyoyev, with a copy to the Uzbek Ambassador to the United States.  On information and belief, this letter was unsolicited.  Akard stated in the letter that he "represent[s] [UCG] with respect to certain legal and related matters impacting their global operations."

23. The letter, on Bose McKinney letterhead, claimed that UCG had "engaged a preeminent U.S. corporate investigatory firm, comprised of former U.S. law enforcement and intelligence community experts," to document certain "unfounded allegations" against UCG and Shadmanov.

24. Akard's letter did not identify the investigatory firm, but attached an unsigned, undated "report" that this "firm" had ostensibly prepared.

25. The purported investigatory report, titled "Report on the Nefarious Activities of Uktam Aripov," is a six-page document, accompanied by an assortment of exhibits.

26. The report makes numerous false allegations about my business associate Uktam Aripov, who resides in Canada.

27. The report also contains numerous false allegations about me and my business, including that I have ties to Russian organized crime and have engaged in threats, extortion, and "corrupt activities."

28. According to his letter, Akard "hope[d]" that the report "proves useful to [the President of Uzbekistan] and appropriate Uzbek law enforcement officials," and offered "to provide additional background information to [the Uzbek] Ambassador in Washington, D.C."

29. Akard signed the letter with his title "U.S. Ambassador (ret.)."

30. On information and belief, Akard and Bose McKinney have also sent communications containing false and disparaging information about me to other individuals.

31. Based on the evidence gathered thus far, I understand and believe that Akard and his firm Bose McKinney are participants in the Campaign and that they accordingly possess material information about the Campaign's activities.

32. The timing and content of Akard's false and disparaging letter and report to President Mirziyoyev align with other events in the Campaign.

33. For example, in or around August 2024, Payne secretly sent a letter to President Mirziyoyev, retracting his previous letter of support and falsely accusing me of serious misconduct, including ties to Russian organized crime, threats, and extortion. These allegations mirror the content of Akard's letter and report.

34. The allegations in Akard's letter and report also closely track allegations made by others who have sought to harm me. For example:

    a. On information and belief, beginning around July 2024, the Campaign began publishing dozens of purported articles, posts, and other paid online content on hosting platforms around the world that included false and disparaging information about me.

    a. On or about October 19, 2024, the London Post published a purported article on its website titled "Corruption Networks of Uzbekistan: From Washington to Tashkent." The Article remains accessible at the following URL: https://london-post.co.uk/corruption-networks-of-uzbekistan-from-washington-to-tashkent. The article makes numerous unfounded criminal accusations about me and my companies.

    b. On or about January 2025, Radha Stirling published similar content about me titled "US Lobbyists used in plot to destabilise US relations with Uzbekistan and steal Central Asia's largest cement holding." The content falsely accuses me of corruption and other criminal misdeeds and was published across several platforms under her control.

**D.** *Efforts to orchestrate my re-arrest*

35. Around the same time as Payne's and Akard's letters, in mid-2024, I learned of a renewed plot to orchestrate my arrest in Uzbekistan once again.

36. Fortunately, my family and I were able to leave the country before I was rearrested, and we have resided in Europe since then.

**E.** *Libel proceedings in England and contemplated additional claims*

37. I seek to redress the harms caused by the Campaign in both pending and contemplated proceedings in England. On April 22, 2025, I filed civil libel claims against two

Campaign participants—the owners of The London Post and Stirling—and I anticipate pursuing additional claims, including claims for libel and conspiracy, against other members of the Campaign subject to jurisdiction in England.

38. Based on the evidence gathered to date, I understand and believe that The London Post and Stirling did not act independently and in isolation; rather, they were part of the larger Campaign to harm me, my reputation, and my interests tortiously and by unlawful means.

39. In both cases, I, through my English counsel, am asking the English courts to decide that the published content is part of a broader disinformation campaign designed to harm me through libel and other unlawful means.

40. Both my existing and contemplated claims will be based in part on any supporting evidence of a broader coordinated disinformation campaign and conspiracy to harm me that is gathered as part of this Application.

41. I intend to bring the contemplated claims imminently, as soon as possible after obtaining further evidence in support of them and identifying individuals who would be defendants. I have already retained my existing counsel in England to represent and advise me on those claims and to file them as soon as possible.

42. The damage inflicted on me as a result of the Campaign is substantial, and I believe it to exceed $10 million.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 1, 2025.

_____
Ovik Mkrtchyan